**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS HUFFSMITH,** **Plaintiff** | : | **No. 3:05cv652** |
| **v.** | : | **(Judge Munley)** |
| **YELLOW TRANSPORTATION, INC., (formerly known as YELLOW FREIGHT SYSTEM, INC.),** **Defendant** | : | |

**MEMORANDUM**

Before the court for disposition in this employment discrimination case is the motion for summary judgment filed by Defendant Yellow Transportation, Inc. (hereinafter "defendant" or "Yellow Transportation"). The matter has been fully briefed and is ripe for disposition.

**Background**

Defendant Yellow Transportation is a trucking company with more than 300 terminals located throughout the United States, including one in Pittston, Pennsylvania. (Doc. 19, Ex. 4, Gromniak Dec. at ¶ 2). Defendant employed Plaintiff Thomas Huffsmith at the Pittston terminal from 1988 until his termination in April 2003, and he held the position of combination driver throughout his employment. (Gromniak Dec. ¶ 7). Combination drivers load/unload goods and drive tractor-trailer combinations.[1] (Gromniak Dec. ¶ 6). David Gromniak served as the manager of the terminal where plaintiff worked, and John Kupchik served as plaintiff's immediate supervisor. (Gromniak Dec. ¶ 9).

At all relevant times, plaintiff suffered from major depression. In March 28, 2003, plaintiff advised management that he suffered from major depression by

[1]The Pittston terminal employs thirty-four (34) drivers, twenty-seven (27) of them are combination drivers and seven (7) are road drivers. (Id. at ¶ 5).

submitting a document entitled "Employee's Statement of Injury."[2] Shortly thereafter, on April 9, 2003, defendant terminated plaintiff's employment. This termination is the basis for the instant lawsuit. Defendant contends that it terminated plaintiff for failure to follow a direct work order. Plaintiff claims that his termination was the result of disability discrimination in violation of the Americans with Disabilities Act, (hereinafter "ADA"), 42 U.S.C. § 1201 et seq. and the Pennsylvania Human Relations Act, (hereinafter "PHRA"), 43 P.S. § 955(a).

Thus, plaintiff filed the instant three-count complaint asserting causes of action for violation of the ADA and the PHRA and for wrongful termination. At the close of discovery, defendant filed a motion for summary judgment bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to the ADA for unlawful employment discrimination, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the

---

[2]Defendant asserts that it knew of plaintiff's depression before this notice.

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

_____In analyzing summary judgment motions in cases involving employment discrimination under the ADA, a burden-shifting analysis is utilized which the United States Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas analysis, the plaintiff must first establish a prima facie case of discrimination. A presumption of intentional discrimination then arises, and the burden of production shifts to the employer to

articulate a legitimate, nondiscriminatory reason for its employment action. Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n.3 (2003). If the employer meets this burden, the presumption of intentional discrimination disappears, and the burden shifts back to the plaintiff to offer evidence demonstrating that the employer's explanation is pretextual. Id.

**Discussion**

In 1990, Congress enacted the ADA to ensure that otherwise qualified individuals would not be discriminated against in employment based upon a disability. 29 C.F.R. pt. 1630, App. At 347-48 (1997). Under the ADA,

> [n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (1995).

Plaintiff asserts that the defendant did in fact discriminate against him because of his disability. Defendant moves for summary judgment raising the following four issues: 1) Is plaintiff a qualified individual with a disability? 2) Did Yellow Transportation have a legitimate non-discriminatory reason for terminating plaintiff's employment? 3) Did plaintiff provide notice of his limitations sufficient to trigger Yellow Transportation's obligation to engage in the interactive process to develop an accommodation? and 4) Is plaintiff's proposed accommodation unreasonable as a matter of law? We will address these issues in seriatim.[3]

**I. Is plaintiff a qualified individual with a disability?**

Defendant first attacks the initial step in the burden shifting analysis set forth above. Yellow Transportation claims that plaintiff has not established a

---

[3]We will discuss issue four together with issue one.

prima facie case.

To establish a prima facie case under the ADA the plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job with or without reasonable accommodations; and (3) he suffered an adverse employment action as a result of discrimination based on his disability. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir.2000)

For purposes of its motion for summary judgment, defendant assumes that plaintiff is disabled within the meaning of the ADA and that he suffered an adverse employment action.[4] The issue Yellow Transportation disputes, therefore, is whether plaintiff was qualified to perform the essential functions of

---

[4]PHRA claims are generally treated the same as ADA claims. Kelley v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Therefore, our analysis of the ADA claim will apply equally to the plaintiff's PHRA claims. The Third Circuit Court of Appeals has explained as follows:

> While the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, Harrisburg Sch. Dist. v. Pennsylvania Human Relations Comm'n, 77 Pa.Cmwlth. 594, 466 A.2d 760, 763 (1983), its courts nevertheless generally interpret the PHRA in accord with its federal counterparts; see Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir.1995) (noting that PHRA and Title VII are interpreted similarly), cert. denied, 518 U.S. 1005, 116 S.Ct. 2524, 135 L.Ed.2d 1049 (1996); Chmill v. City of Pittsburgh, 488 Pa. 470, 412 A.2d 860, 871 (1980) (recognizing precedents suggesting that "the Human Relations Act should be construed in light of 'principles of fair employment law which have emerged relative to the federal [statute] ····' ") (quoting General Elec. Corp. v. PHRC, 469 Pa. 292, 365 A.2d 649, 654 (1976)).

Id., at 105.

his job with or without reasonable accommodations. Plaintiff bears the burden of establishing that he is a "qualified individual with a disability." Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 806 (1999).[5]

Defendant argues that plaintiff cannot meet this burden as he cannot demonstrate the availability of any proposed reasonable accommodations for his clinical depression that would enable him to perform the essential functions of his job as a combination driver. Defendant's position is that plaintiff has requested accommodations in order to perform his job and that these accommodations are not workable and are, in fact, unreasonable as a matter of law. Thus, defendant argues that plaintiff has failed to establish he is "qualified" to perform the job.

The Third Circuit Court of Appeals has explained the term "qualified" as follows:

> In evaluating whether a plaintiff is 'qualified individual with a disability,' we have held that a plaintiff must 'satisf[y] the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.' and, the plaintiff must be able to 'perform the essential functions of the position held or desired, with or without reasonable accommodations."

Taylor v. Phoenixville School District, 174 F.3d 142, 157 (3d Cir. 1999). In the instant case, it is undisputed that the plaintiff satisfies the prerequisites for the position, such as a commercial driver's license, and employment experience, as he had been performing the job for fifteen (15) years before the onset of his

[5]The issue of accommodation is also important in that an employer commits unlawful discrimination under the ADA if it does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A).

disability. We must determine whether he was able to perform the essential functions of the position with or without reasonable accommodations.

Defendant urges us to examine the accommodation that the plaintiff requested in October 2005, which include the following:

- that he work only in an environment that is free of undue stress caused by the use of intemperate language by his supervisors

-that his work assignments are not received on short notice and are not arbitrary

-that adequate notice be provided of tasks such that a reasonable person would have sufficient time to complete them

- that no threatening or aggressive behavior be used towards him

- that dialogue between him and his supervisors be performed in a calm, reasonable and open fashion

(Ex. A to Declaration of Defendant's Human Resource Director Jerome Wilson, Doc. 19). Defendant argues that the accommodations requested by plaintiff are unreasonable. Therefore, he is not qualified for the job of combination driver, and he has not met his prima facie case. We disagree.

Plaintiff presented these accommodation requests in March and/or October 2005, after the commencement of the instant lawsuit and approximately two years *after* his dismissal. The law provides that "[t]he determination of whether an individual with a disability is qualified is made at the time of the employment decision, and not at the time of the lawsuit." Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006). Thus, in order to determine if an employee is qualified for a position, we must examine plaintiff's qualifications at the time of his dismissal, that is April 9, 2003, and it is important to review the circumstances surrounding the plaintiff's termination.

On April 9, 2003, plaintiff suffered from several symptoms due to his disability. He suffered from kaleidoscopic vision, and he had no peripheral vision. (Doc. 24-6, Huffsmith Dep. at 120, 132). He informed his immediate supervisor, Kupchik, that he was stressed and that he was going home sick. (Doc. 24-6, Huffsmith Dep. at 122). He then went to speak with Gromniak, the terminal manager. In this context, plaintiff told Gromniak to ". . . look in my file and (you'll) see that I (am) under a doctor's care." (Doc. 24-6, Huffsmith Dep. at 123). Plaintiff was referring to the "Employee's Statement of Injury" that he had submitted to his employer on March 27, 2003. (Doc. 24-2, Employee's Statement of Injury). This statement indicates that stress related to work issues caused him to exhibit the symptoms of major depression including sadness, tearfulness, loss of interest in activities, isolation, weight gain, sleep difficulties, restlessness, loss of energy, fatigue and feelings of worthlessness. (Id.). It also states that he suffers from generalized anxiety disorder. (Id.).

Plaintiff sought to return home due to the onset of the symptoms. A leave from work may be an appropriate accommodation with regard to the ADA. See, e.g., Shannon v. City of Philadelphia, No. CIV.A. 98-5277, 1999 WL 1065210, at * 5-6 (E.D. Pa. 1999). This accommodation is the sole accommodation mentioned at the time of the termination. The other accommodations mentioned in the defendant's brief were discussed much later. The record contains no indication that plaintiff was unqualified to perform his job, a job he had been performing for fifteen (15) years, merely because he sought to accommodate his illness by going home early on one day due to stress-related issues. Thus, we find that the plaintiff has presented sufficient evidence to establish that he was in fact qualified to perform the functions of his job on the date he was terminated.

Based upon Gaul v. Lucent Technologies, Inc., 134 F.3d 576 (3d Cir.

1998), defendant argues that the accommodations requested by plaintiff are unreasonable. We find defendant's reliance on Gaul to be unavailing. In Gaul, plaintiff worked for AT & T as a Technical Associate. Gaul, 134 F.3d at 577. While working there he was diagnosed with depression and anxiety related-disorders. Id. Through the years, Gaul was on and off disability leave due to his disorders. Id. In September of 1992, he went out on long-term disability leave. Id. at 578. He subsequently filed suit against AT & T, for, inter alia, a violation of the ADA for not accommodating his disability. Id. at 579. He posited that an appropriate accommodation would be transfer away from coworkers who subjected him to prolonged and inordinate stress. Id. The Third Circuit found that such an accommodation was not proper under the ADA. The Court explained:

> [The] proposed accommodation would impose a wholly impractical obligation on AT&T or any employer. Indeed, AT & T could never achieve more than temporary compliance because compliance would depend entirely on Gaul's stress level at any given moment. This, in turn, would depend on an infinite number of variables, few of which AT & T controls. Moreover, the term "prolonged and inordinate stress" is not only subject to constant change, it is also subject to tremendous abuse. The only certainty for AT & T would be its obligation to transfer Gaul to another department whenever he becomes "stressed out" by a coworker or supervisor. It is difficult to imagine a more amorphous "standard" to impose on an employer.

Id. at 581.

The court also found that the proposed accommodation would impose an extraordinary administrative burden upon the employer as it would have to "consider . . . Gual's stress level whenever assigning projects to workers or teams, changing work locations, or planning social events. Such considerations would require far too much oversight and are simply not required under the law." Id.

Finally, the court reasoned that in order to provide the requested accommodation it would have to establish the conditions of the plaintiff's employment, including with whom he worked. The ADA does not allow the court to take on such responsibility. Id.

Defendant's argument is that the instant case is the same because plaintiff requests similar accommodations. While it is true that the accommodations that plaintiff formally requested in 2005 are similar to those requested in Gaul, we must examine the disability and accommodation request as it existed on the date of plaintiff's termination. Plaintiff merely sought the accommodation of being able to leave work, on that day only, due to a flair up of his illness. Therefore, we find defendant's reliance on Gaul and on accommodation requests from almost two years after the dismissal to be unpersuasive. Accordingly, defendant's motion for judgment based upon plaintiff's prima facie case will be denied.

**II. Legitimate Non-Discriminatory Reason / Pretext**

As the plaintiff has met the burden of establishing a prima facie case of discrimination, the burden of production shifts to the defendant to provide a legitimate non-discriminatory reason for the discharge. Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n.3 (2003). "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Defendant has provided such a reason.

The record indicates that on the day of his termination, plaintiff's supervisor, Kupchik, directed him to hook up a "pup" which is a type of trailer. (Doc. 24-6, Pl. Dep. 118-119). Hooking up pups was a normal work assignment

for the plaintiff. (Doc. 24-6, Pl. Dep. 119). Plaintiff asked which pup to hook up to. (Id.). Kupchik provided plaintiff with a list of pups and raised his voice to say, "Here is a list of the pups; grab one." (Id.). Instead of hooking up a pup, plaintiff went to the manager's office and spoke with Gromniak, and told him that he had to leave. (Id. at 121). Gromniak indicated to the plaintiff that he had a choice, either perform the work assignment or get fired. (Id. at 122). The plaintiff and Gromniak discussed the matter, and then Gromniak fired the plaintiff. (Id.). Defendant claims that it terminated plaintiff's employment due to his refusal to follow a direct work order. Failure to follow a direct work order can be a legitimate non-discriminatory reason for termination of employment. See Varela v. Philadelphia Neighborhood Housing Services, 68 F. Supp. 2d 575, 582 (E.D. Pa. 1999) (employee's failure to comply with company rules and procedures and his insubordination toward a supervisor is sufficient to establish a legitimate nondiscriminatory reason for firing). Thus, we will proceed to the next step in the McDonnell Douglas analysis.

As the defendant employer met its burden, to provide a legitimate non-discriminatory reason for the discharge, the presumption of intentional discrimination disappears, and the burden shifts back to the plaintiff to offer evidence demonstrating that the employer's explanation is pretextual. Raytheon Co., 540 U.S. at 50, n.3. "[T]o do so, the plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes, 32 F.3d at 762.

Plaintiff presents several arguments to establish that the defendant's

proposed legitimate non-discriminatory reason for the discharge is pretextual. First, plaintiff contends that the defendant never gave him a direct order that he refused. Plaintiff's position on this point is not convincing. In his deposition, he admits that the Kupchik gave him a work assignment, to hook up a pup trailer. (Doc. 24-6, Pl. Dep. at 122). He also admits that instead of doing the work assignment, he went to Gromniak's office and told him he was leaving. (Id.). Therefore, rather than presenting evidence that the plaintiff never received a work order that he refused to do, plaintiff has submitted evidence that he did receive a work assignment that he failed to do. We are thus unconvinced by plaintiff's argument.

Next, plaintiff asserts that the defendant has conceded a substantial inconsistency and contradiction in its explanation for the plaintiff's termination. Plaintiff's brief does not provide a clear explanation of this substantial inconsistency and contradiction. Evidently, an e-mail report from Kupchik to Gromniak regarding the incident indicates that after telling plaintiff his assignment, plaintiff asked where he could find an empty trailer. Kupchik told him to check the yard and that there were lots of trailers from which to choose. Plaintiff then walked to Gromniak's office without comment. (Doc. 25-1, Gromniak Dep. at 208). Plaintiff stresses that the e-mail fails to indicate that plaintiff told Kupchik that he was going off sick and refusing to do a work assignment.

At his deposition, Gromniak testified that plaintiff and Kupchik had more of a conversation before plaintiff came to Gromniak's office than is indicated in the e-mail report. Gromniak testified that Kupchik came to him first and indicated that plaintiff refused to accept a work assignment and was going home sick because he felt "stressed." (Doc. 25-1, Gromniak Dep. at 201, 205). Then

Gromniak talked to plaintiff and fired him. Evidently, the inference that plaintiff tries to raises is that Gromniak did not know about the work assignment that plaintiff refused to do and merely fired him when he said he needed to take the rest of the day off. Plaintiff's own deposition, however, reveals that Gromniak knew of the failure to do the work assignment before firing him. Plaintiff stated that he spoke with Gromniak and that they went "back and forth" on the issue of whether he would do his work assignment or be fired. (Doc. 24-6, Pl. Dep. at 123).

Plaintiff's position would be convincing if the record revealed that he received his work assignment from Kupchik, reported to Gromniak that he had to go home, and then Gromniak fired him without knowing about the work assignment he failed to do. If that were the case, the proffered reason for the dismissal would clearly be pretextual as the one who fired him would not have known of the reason until after the dismissal. That is simply not the case here. While discussing plaintiff's desire to leave work, Gromniak knew about the failure to perform the work assignment. Thus, we find no indication of a "substantial inconsistency or contradiction" in the record so as to support an inference of pretext.

Next, plaintiff claims that pretext is established in this case because other employees who sought to take time off were not fired, and in fact were sent to the hospital for medical attention. Plaintiff has presented evidence of two separate occasions where other, non-disabled, employees refused work assignments due to feeling fatigued and sought to go home. (Doc. 24-6, Pl. Dep. at 151-53). Instead of firing these employees, the defendant sent them to the hospital for medical examinations, took them off the job and did not discipline them. (Id.). Evidence that employees who engaged in the same type of

misconduct were not fired, whereas the plaintiff was, is evidence that the employer's proffered nondiscriminatory reason for the termination is merely pretext. McDonald v. Sante Fe Trail Transp. Co., 427 U.S. 273, 282 (1976).

Defendant has, however, presented evidence that three non-disabled combination drivers were fired for refusing to follow a direct work order. (Doc. 19-2, Def. Statement of Undisputed Material Facts, ¶ 102, 103, 105-108, as agreed to in Doc. 21, plaintiff's response thereto). We are left with a pattern where sometimes people outside of plaintiff's class are treated better then plaintiff was treated, and sometimes they are treated the same or worse. Where such a pattern exists, pretext is not established. Simpson v. Kay Jewelers, 142 F.3d 639, 646-47 (3d Cir. 1998) (an employee charging discrimination cannot pick a person she perceives as a valid comparator who was allegedly treated more favorably, and completely ignore comparators who were treated equally or less favorably than she).

Plaintiff also argues that the temporal proximity between when the defendant received its initial written notification of his disability and the date of his firing is evidence of discrimination. In employment lawsuits involving allegations of retaliation, a plaintiff must establish a causal link between a protected employment action and an adverse employment action. This causal link can be established by demonstrating a temporal proximity between the protected activity and the adverse employment action. To establish a causal link, the timing of the allegedly retaliatory action must be "very close" to the protected activity. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). Although the instant case is not a retaliation action, the plaintiff argues that the fact that he was fired ten (10) days from initially notifying the defendant of his disability is evidence that he was discriminated against because of his

disability. After a careful review, we agree.

The defendant argues that it knew much earlier that defendant was suffering from stress as he took several days off earlier for that reason. This argument, however, is best left for the jury as we cannot make a determination at this point as to when the defendant conclusively knew that plaintiff suffered from a disability. As questions of fact exist, it will be for the jury to determine when defendant knew of plaintiff's disability, and to draw whatever inferences it chooses regarding the temporal proximity between defendant's notice and plaintiff's firing.

The plaintiff also argues that defendant's bias and hostility toward the disabled is evidenced in the manner they treated the disabled who filed union grievances. Plaintiff himself filed a union grievance with regard to the discharge at issue in this case. Plaintiff claims that defendant refused to allow plaintiff's grievance to be processed by the Central Pennsylvania Joint Area Grievance Committee because plaintiff had not provided Yellow Transportation with a medical release to return to work "without restrictions." Plaintiff's position is that in requiring an employee to be able to return to work "without restrictions," Yellow Transportation demonstrates bias and hostility to those employees who require accommodations. Plaintiff supports this contention with his deposition where he states that the company would not hear the grievance until all medical restrictions were lifted. (Doc. 24-6, Pl. Dep. at 190-92).

Defendant has presented evidence that the Grievance Committee is made up of an equal number of union and management representatives. (Doc. 35-3, Wachhaus Dec. ¶ 4). Defendant does not have any representative who participates, instead management representatives from other companies serve on the committee. (Id.). Defendant has also presented evidence that it was

never their position that plaintiff's grievance be held in abeyance until he could return to work without restrictions. Rather, they believed it was the practice for the Central Pennsylvania Grievance Panel to hold cases seeking reinstatement in abeyance until the driver was medically able to return to work. (Doc. 35-3, Dec. Wachhaus, ¶ 6-7, and attachment B, letter dated June 30, 2005, from Wachhaus, Defendant's Labor Relations Manager to Business Representative of Teamsters Local Union 229).

Plaintiff has thus created a genuine issue of material fact with regard to whether the defendant harbored hostility to those who require accommodations. This evidence along with the evidence of temporal proximity between when plaintiff first provided written notice of his disability and his firing could be sufficient for the jury to find that the defendant's proffered legitimate non-discriminatory reason for the dismissal was merely pretext and the real reason was disability discrimination. Accordingly, the defendant's motion for summary judgment on this issue will be denied.

**III. Notice of need for reasonable accommodation**

An employer may be liable for a violation of the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A). "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. Pt.

1630, App. § 1630.9 at 359.

In the instant case, the plaintiff argues that instead of providing the accommodation he requested, time off from work to deal with his stress, or participating in an interactive process to determine the appropriate accommodation, the defendant simply terminated his employment. Defendant argues plaintiff's request for an accommodation was not sufficient to trigger the defendant's obligations to engage in the interactive process.

> To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Taylor v. Phoenixville School Dist.,184 F.3d 296, 319-20 (3d Cir. 1999).

Defendant contends that the notice plaintiff provided of his request for accommodation was insufficient. Defendant argues that its obligation to engage in an interactive process was never triggered because plaintiff failed to provide it with notice of his alleged disability and the limitations it caused, and he failed to request an accommodation or assistance with his alleged disability.

We disagree. As discussed above, plaintiff has presented evidence that several days after providing written notice of his disability to the defendant, he told Gromniak that he had to leave, that he was stressed and could not perform his duties in a proper and safe manner. Gromniak told plaintiff that he had been given a work assignment, if he did not do it, he would be fired. Plaintiff further told Gromniak that he was under a doctor's care and he could see that if he looked into his file. Gromniak then fired plaintiff.

____We find these facts support a finding that the defendant knew about

plaintiff's disability and that the plaintiff did request an accommodation, to be let off from work. Defendant argues that the notice provided by the plaintiff is insufficient. Defendant contends that plaintiff had to inform it that "he needed to go home because the stress *was aggravating or triggering his clinical depression and that the only way to relieve the stress/depression was to leave the premises immediately.*" (emphasis in original) (Doc. 19, Def. Brief in Supp. MSJ at 26). The law provides, however, that notice of seeking an accommodation "does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability. In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability. " Taylor v. Phoenixville School Dist., 184 F.3d 296, 313 (3d Cir. 1999).

In the instant case, when the facts are viewed in the light most favorable to the non-moving party, it is evident that Yellow Transportation knew about plaintiff's disability and his desire for an accommodation for that disability. Plaintiff had made defendant aware of his disability. He stated he was feeling stressed and requested that his supervisor examine his file to confirm the disability. Although, he did not use the "magic" word "accommodation," plaintiff requested to be let off from work as an accommodation so that he could bring his stress under control. Instead of engaging in an interactive process to accommodate the plaintiff, the defendant immediately terminated his employment.

In support of its position, the defendant relies upon Russell v. TG Missouri Corp., 340 F.3d 735 (8th Cir. 2003). The facts of that case are so different from the instant case, that it is readily distinguishable. In Russell, an employee

suffering from bipolar disorder experienced an anxiety attack at work after being told that she had to work the next day, a Saturday. Id. at 739. She then informed her supervisor that she needed to leave work. She was told if she left, it would be considered an "unscheduled absence." Id. She did not inform her supervisor that the reason she needed to leave was that she was experiencing an anxiety attack. Id. She did leave work, however, and she did not work on the next day. Id. The employer then terminated her employment. Id. The court found that because she did not tell her employer that the reason she needed to leave was because of her disability, the employer could not be held liable for failing to accommodate her disability. Id. at 742.

In the instant case, the plaintiff made clear that the reason he had to leave work was because he was "stressed" and he referred his supervisor to this file to establish that he was under a doctor's care. Sufficient evidence has been provided therefore that plaintiff needed the time off for his disability, and the case is distinguishable from Russell.

_____Thus, we find no merit to the defendant's argument, and summary judgment will be denied.

**Conclusion**

For the above reasons, we find that the defendant's motion for summary judgment should be denied. Plaintiff has presented a prima facie case of disability discrimination, and each party has met its burden under the McDonnell Douglas burden shifting analysis. Thus, a jury must decide whether plaintiff's termination was the result of invidious discrimination. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS HUFFSMITH,**<br>**Plaintiff**<br><br>**v.**<br><br>**YELLOW TRANSPORTATION, INC., (formerly known as YELLOW FREIGHT SYSTEM, INC.),**<br>**Defendant** | : | **No. 3:05cv652**<br><br>**(Judge Munley)** |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

_____**AND NOW**, to wit, this 15th day of August 2006, the defendant's motion for summary judgment (Doc. 19) is hereby **DENIED**.

BY THE COURT:

s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court